UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-510-GWU

DEBBIE LAWSON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

06-510 Lawson

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Debbie Lawson, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of degenerative joint disease of the bilateral knees.  (Tr. 15).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Lawson retained the residual functional capacity to perform her past relevant work, and therefore was not entitled to benefits.  (Tr. 15-17).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether the plaintiff, a 56 year-old woman with a "limited" education (Tr. 184, 202) could perform any jobs if she were limited to "medium" level exertion, and also had the following non-exertional impairments (Tr. 197).  She: (1) could occasionally climb ladders or ropes; (2) could occasionally kneel, crouch, and crawl; and (3) could occasionally perform

fine manipulation. (Id.). The VE responded that with these restrictions, the plaintiff could perform her past work as a stocker, cleaner, cashier, and cook. (Tr. 198).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence. The plaintiff's Date Last Insured (DLI) was September 30, 2005 (Tr. 166), meaning that she was required to show disability existing prior to this date in order to be entitled to benefits.

Mrs. Lawson alleged disability due to arthritis in her hands, knees, joints, hips, and back. (Tr. 68, 185, 205). She testified to being extremely limited in her ability to bend and stoop, lift objects, and walk, particularly because of knee pain, but also because of wrist problems. (Tr. 186-90, 192-5). She testified that she had a limited ability to afford doctor's office visits. (Tr. 190).

Dr. Mark Burns conducted a consultative examination of Mrs. Lawson on August 1, 2004 and found essentially no abnormalities other than an inability to see out of the left eye, elevated blood pressure, and lumbar spine flexion limited to 45 degrees. (Tr. 114-17). He noted that she complained of pain throughout the orthopedic evaluation, and an x-ray of the left knee appeared to show mild to moderate degenerative change and "minimal cartilage present" (Tr. 117-18). However, Dr. Burns found no restrictions on physical activities. (Tr. 117).

The plaintiff sought treatment from Dr. George Chaney on August 31, 2004. Dr. Chaney noted that Mrs. Lawson wore glasses, and both hands and both knees

were swollen and tender. (Tr. 139-40). The knees had a decreased range of motion, and an x-ray of the left knee showed degenerative joint disease with moderate multiple osteophytes, definite narrowing of the joint space, some sclerosis, and possible deformity of the bone contour. (Tr. 140). He prescribed medication and ordered laboratory work. (Tr. 141).

A state agency physician, Dr. James Ramsey, reviewed the record at this point[1] and opined on September 22, 2004 that Mrs. Lawson could perform "medium" level exertion with the non-exertional limitations accepted by the ALJ and given in the hypothetical question, although Dr. Ramsey also noted "limited" near acuity. (Tr. 129-34). Although Dr. Ramsey noted Dr. Chaney's findings of swelling in the hands and decreased motion in the knees, most of his opinion appears to have been based on the report of Dr. Burns. (Tr. 130).

Meanwhile, Dr. Chaney had obtained laboratory work showing a positive anti-nuclear antibody (ANA) result (Tr. 138, 146, 153).[2] Dr. Chaney examined the plaintiff on three more occasions, in October, 2004, September, 2005, and May, 2006,

---

[1] A state agency employee who was not an acceptable medical source had earlier prepared a functional capacity assessment based only on the Burns report. (Tr. 120-7).

[2] The test results were dated slightly before Dr. Ramsey completed his assessment, but since they were not mentioned in the assessment, they may not have been available to the state agency reviewer.

making essentially the same findings of swelling and tenderness in the knees with a decreased range of motion.  (Tr. 136-7, 148-9, 178-9).

Dr. Chaney completed a physical medical assessment form on May 24, 2006, indicating that Mrs. Lawson would be limited to "light" level exertion, with a "limited" ability to push and pull with both the upper and lower extremities, a limited ability to reach in all directions and perform gross and fine manipulation, a limited ability to see, and should be limited in her exposure to temperature extremes, vibration, humidity, wetness, and hazards, and could occasionally climb, balance, kneel, crouch, and crawl.  (Tr. 174-7).

As the plaintiff notes, if she were limited to "light" exertion, as a person of "advanced" age and limited education, Rule 202.02 of the Commissioner's Medical-Vocational Guidelines (the "grids") would direct a decision of disabled.  The ALJ rejected Dr. Chaney's opinion because he felt that it was inconsistent with his "conservative" treatment and because his notes were not detailed enough to establish a longitudinal picture of the claimant's medical impairments which would entitle his opinion to controlling weight.  (Tr. 16).  The ALJ also criticized Dr. Chaney's opinion as being given well after the September 30, 2005 DLI, while, somewhat contradictorily, also criticizing his notes for showing no change in the plaintiff's condition between 2004 and 2006. (Id.).  However, the ALJ also rejected the opinion of Dr. Burns, the only other examiner, as being inconsistent with

significant medical evidence of arthritic pain as well as his own observation of diminished lumbar spine range of motion. (Id.).  Therefore, the only medical source upon whom the ALJ could have relied was Dr. Ramsey.

While the opinion of a non-examining source may be accepted over that of an examiner, the non-examiner must have had access to the entire record and clearly stated his reasons for his difference of opinion.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  Dr. Ramsey did not have the opportunity to review or comment on Dr. Chaney's limitations, and did not review all of his findings, including the objective ANA testing.  Furthermore, although Dr. Chaney's opinion may have been rendered after the DLI, as the ALJ himself implicitly noted, there is no evidence of a deterioration in Mrs. Lawson's condition after the DLI which would render Dr. Chaney's assessment clearly inapplicable to the relevant period.  Therefore, while the evidence does not support the immediate award of benefits, a remand will be required in order to obtain, at a minimum, an opinion from a medical source with access to the entire record.

The decision will be remanded for further consideration.

This the 31st day of August, 2007.



Signed By:

G. Wix Unthank

**United States Senior Judge**